IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 4, 2025 at Jackson

## STATE OF TENNESSEE v. JAMES BRENT WALL

**Appeal from the Circuit Court for Dickson County**
**No. 22-CC-2017-CR-93   David D. Wolfe, Judge**
_____

**No. M2024-00979-CCA-R3-CD**
_____

The Defendant, James Brent Wall, pled guilty to the sale of a controlled substance and two counts of TennCare fraud. The trial court imposed an effective six-year sentence, which it suspended to probation. The State later alleged that the Defendant violated the conditions of his probation by refusing to submit to drug screening, failing to pay restitution, and absconding from supervision. Following a hearing, the trial court revoked the suspended sentences and ordered the Defendant to serve the remainder of his sentences in the Tennessee Department of Correction. On appeal, the Defendant contends that the trial court lacked jurisdiction to revoke his probation because the court clerk retired the case, recalled the violation warrants, and issued an alias capias. Upon our review, we agree. Accordingly, we respectfully reverse the trial court's judgment and remand the case with instructions to dismiss the proceedings.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgment of the Circuit Court Reversed; Case Dismissed**

TOM GREENHOLTZ, J., delivered the opinion of the court, in which J. ROSS DYER and JILL BARTEE AYERS, JJ., joined.

Matthew T. Mitchell, District Public Defender (on appeal); and Michael Tyler Howard, Assistant District Public Defender (at hearing), for the appellant, James Brent Wall.

Jonathan Skrmetti, Attorney General and Reporter; G. Kirby May, Assistant Attorney General; W. Ray Crouch, Jr., District Attorney General; and Jennifer Stribling, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## FACTUAL BACKGROUND

In November 2018, the Defendant pled guilty to the unlawful sale of a controlled substance and two counts of TennCare fraud. Pursuant to the plea agreement, the trial court imposed three consecutive two-year sentences. The court suspended the effective six-year sentence and ordered it to be served on probation.

Six months later, the Defendant's probation officer filed a violation report alleging multiple failures to comply with the conditions of probation. The report stated that the Defendant had failed to report as instructed, refused to submit to drug screening, and failed to pay restitution, among other violations. The officer also noted that the Defendant's supervision level had been increased as a sanction for earlier noncompliance. Based on this report, the trial court issued a warrant for the Defendant's arrest on May 13, 2019.

In April 2020, the probation officer filed an amended report alleging that the Defendant had absconded from supervision, and the court issued a second violation warrant. In an apparent effort to retire the case while the Defendant remained at large, the circuit court clerk recalled both violation warrants and issued an alias capias. According to the court's rule docket, the warrants were recalled on February 3, 2022. The Defendant was eventually arrested on the alias capias on January 8, 2024.

### A. PROBATION VIOLATION HEARING

The trial court conducted a revocation hearing on March 26, 2024. At the hearing, the State presented testimony from Probation Officer Angel Niamtu. She testified that the Defendant had failed to provide proof of employment, failed to report for supervision on multiple occasions, and refused to submit to drug testing. She further stated that the Defendant had not made any payments toward court costs, fines, probation fees, or restitution.

Officer Niamtu also addressed the allegation of absconding. She testified that the Defendant had not resided at his approved address since May 2019 and had actively evaded supervision. She described her efforts to locate him, including reports that he hid in the crawl space of his home to avoid detection. She confirmed that the Defendant was found hiding in the same location at the time of his arrest in January 2024.

The Defendant testified on his own behalf. He acknowledged initial compliance with the terms of probation but admitted that he stopped reporting in May 2019. He attributed his failure to maintain contact to a combination of physical and mental health issues, as well as a broken phone.

The Defendant testified that when he contacted Officer Niamtu in June 2019, she informed him that his probation had been revoked. He stated that, out of fear of incarceration, he chose not to report and instead went "on the run." He claimed to have remained in Dickson County, acknowledged awareness of the outstanding violation warrant since 2019, and requested a second chance. He also testified to chronic back pain resulting from prior surgery involving a titanium bar, which he claimed limited his ability to work.

Following the testimony, the trial court found by a preponderance of the evidence that the Defendant had violated the terms of his probation. Although the court acknowledged the Defendant's initial compliance, it found that he had failed to meet most of his obligations and had demonstrated neither rehabilitation nor accountability. The court revoked the suspended sentences in full and ordered the Defendant to serve the balance of his six-year sentence in confinement.

The court revoked the suspended sentences on June 11, 2024. The Defendant filed a timely notice of appeal twenty-one days later. *See* Tenn. R. App. P. 4(a).

### B.    LIMITED REMAND ON JURISDICTIONAL ISSUES

After the appeal was docketed, the parties submitted briefs. For the first time on appeal, the Defendant argued that the trial court lacked subject matter jurisdiction to revoke his probation. He asserted that the original and amended violation warrants had been recalled and replaced with an alias capias and that the capias alone was insufficient to support revocation.

From our perspective, the record did not clearly reflect the procedural history surrounding the warrants and the alias capias. Moreover, the parties disagreed about the significance of various docket entries. As a result, this court ordered a limited remand of the case on January 21, 2025, pursuant to Tennessee Code Annotated section 27-3-128 (2017). In this remand, we requested the trial court to conduct a limited evidentiary hearing and enter findings of fact and conclusions of law addressing whether it had subject matter jurisdiction to revoke each of the Defendant's suspended sentences. In particular, we

3

requested findings on whether proper legal process had been issued and served so as to initiate revocation proceedings or toll the running of the Defendant's probationary term.

Holding a hearing on April 4, 2025, the trial court noted that the jurisdictional issues were not brought to its attention during the original revocation hearing. Agreeing with the Defendant, the court entered a supplemental order making the following findings:

1.  The Defendant pled guilty to three offenses and received consecutive two-year sentences, suspended to probation, with an expiration date of November 18, 2024;

2.  The original and amended violation warrants were recalled by the Circuit Court Clerk and never reissued;

3.  The Defendant was arrested on January 8, 2024, pursuant to an alias capias;

4.  The Defendant was never served with either of the violation warrants;

5.  The Defendant's effective sentence expired on November 19, 2024; and

6.  The trial court did not have subject matter jurisdiction to revoke the Defendant's probationary sentence because he was never served with the probation violation warrants.

Upon receiving the trial court's order, this court directed the parties to submit supplemental briefing on whether the appeal should be dismissed. Having reviewed the parties' original and supplemental submissions, we now address the issues raised in this appeal.

## ANALYSIS

In this appeal, the Defendant raises three issues. First, he argues that the trial court lacked subject matter jurisdiction to adjudicate the probation violations because the court clerk had previously recalled the violation warrants and never reissued them. Second, he contends that the trial court improperly shifted the burden of proof to the Defendant during

the revocation hearing. Third, he asserts that the trial court abused its discretion in revoking his suspended sentence. The State responds that the trial court retained jurisdiction because it revoked the Defendant's sentences before they expired, and it maintains that the revocation decision was within the court's discretion.

Because we conclude that the trial court lacked subject matter jurisdiction, we do not address the Defendant's remaining claims concerning the burden of proof or the propriety of the revocation decision.

### A. AUTHORITY TO REVOKE SUSPENDED SENTENCES

A trial court's authority to revoke a suspended sentence is conferred by statute and is limited by both temporal and procedural requirements. Pursuant to Tennessee Code Annotated section 40-35-310(a) (2019 & Supp. 2024), a trial court may revoke a defendant's probation "at any time within the maximum time that was directed and ordered by the court for the suspension." Stated another way, "if a defendant successfully completes a probationary sentence, the trial court is without authority to revoke probation and order service of the original sentence." *State v. Hunter*, 1 S.W.3d 643, 646 (Tenn. 1999).

However, before the trial court may exercise its revocation authority, it must first properly initiate revocation proceedings in accordance with the statutory procedures set forth in Tennessee Code Annotated section 40-35-311 (2019 & Supp. 2024). *See State v. Tankersley*, No. W2005-02901-CCA-R3-CD, 2007 WL 1259212, at *3 (Tenn. Crim. App. Apr. 30, 2007) ("[L]ooking at the unambiguous language of the statute, it appears that the clear intention of the legislature was to require the issuance of a warrant for the arrest of a defendant who has committed a probation violation in order to initiate the procedure to revoke probation."), *no perm. app. filed*; *State v. Byrd*, No. E2002-01589-CCA-R3-CD, 2003 WL 21047130, at *1 (Tenn. Crim. App. May 9, 2003) ("It appears the clear intention of the legislature was to require a warrant for the arrest of a defendant who has committed a probation violation."), *no perm. app. filed*. A challenge to the trial court's jurisdiction to revoke a suspended sentence is a matter of law, which "we will review de novo with no presumption of correctness." *State v. Guy*, 683 S.W.3d 763, 769 (Tenn. Crim. App. 2023).[1]

---

[1] Tennessee Code Annotated section 40-35-311(a)(1) currently provides that a revocation proceeding may be initiated by issuing a warrant or a summons. The authorized use of a summons is "[f]or

At the time the trial court issued the original and amended revocation warrants in this case, Tennessee Code Annotated section 40-35-311(a) provided that a revocation proceeding must be initiated by the trial judge causing "to be issued under the trial judge's hand a warrant for the arrest of the defendant as in any other criminal case." A "warrant of arrest" is defined in Tennessee Code Annotated section 40-6-201 (2018) as an "order, in writing, stating the substance of the complaint, directed to a proper officer, signed by a magistrate, and commanding the arrest of the defendant."

Although section 40-35-311(a) refers specifically to a "warrant," this court has recognized that other forms of process may satisfy the statutory requirement—so long as they meet the essential characteristics of a warrant under section 40-6-201. Accordingly, it is not the label assigned to the document, but its contents, that determine whether it qualifies as a warrant capable of initiating a revocation proceeding. For example, a "probationary capias" may serve this function if it is signed by the judge, identifies the alleged probation violations, and directs an officer to make an arrest. *See State v. Bonds*, No. E2011-01199-CCA-R3-CO, 2012 WL 1956701, at *8 (Tenn. Crim. App. May 31, 2012), *perm. app. denied* (Tenn. Nov. 20, 2012); *State v. Washington*, No. E2008-00515-CCA-R3-CD, 2009 WL 2263850, at *4 (Tenn. Crim. App. July 29, 2009), *no perm. app. filed*. Similarly, a document titled "Order" may qualify as a "warrant" if it is signed by the trial judge, describes the rules of probation that were allegedly violated, and directs that the defendant be arrested. *See State v. Woods*, No. W2007-02025-CCA-R3-CD, 2008 WL 3983107, at *4 (Tenn. Crim. App. Aug. 28, 2008), *no perm. app. filed*; *State v. Sonnemaker*, No. E2003-01402-CCA-R3-CD, 2004 WL 483239, at *4 (Tenn. Crim. App. Mar. 12, 2004), *perm. app. denied* (Tenn. Oct. 11, 2004).

In short, Tennessee law requires that probation revocation proceedings be initiated by a formal legal process that satisfies the statutory definition of a warrant, whether titled as a warrant or as another type of order. This process must be authorized by a judge, describe the alleged probation violations, and direct the defendant's arrest. Whether the revocation authority is preserved thus turns not on the label affixed to the document, but on whether the process used fulfills these legal criteria. With these principles in mind, we now consider whether any such process existed to maintain or initiate the revocation proceedings in this case.

---

a technical violation brought by a probation officer, and subject to the discretion of the judge[.]" *See id.* § 40-35-311(a)(1)(B) (Supp. 2024).

## B. Recall of the Warrants and Issuance of the Alias Capias

In this case, the State is largely correct that the revocation proceedings were held in a timely manner, meaning that the revocation hearing occurred before all of the sentences had expired. Thus, at least with respect to some of the sentences, the *temporal* requirements necessary for the trial court's jurisdiction were met.

However, the *procedural* requirements necessary for the trial court's jurisdiction were not met. The original and amended violation warrants issued in May 2019 and April 2020, respectively, were proper to initiate revocation proceedings, and they tolled the running of the three sentences until they were recalled in February 2022. *See Guy*, 683 S.W.3d at 769; *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) ("The interruption of the probationary period is triggered by the issuance of the probation revocation warrant and not by service of the warrant on the defendant."). When the court clerk recalled the warrants, the action had the effect of dismissing the revocation proceedings. Because a revocation proceeding can only be initiated by a violation warrant or its legal equivalent, the recall of the violation warrant will have the practical effect of dismissing the pending revocation proceedings. Thus, unless other process had been issued to maintain or reinitiate the revocation proceedings, the trial court could not have revoked the Defendant's suspended sentences.

The only other process issued in this case was an alias capias prepared by the circuit court clerk in November 2021. Upon review of the record, we conclude that this alias capias did not constitute the type of warrant required by Tennessee Code Annotated section 40-35-311 to maintain or reinitiate probation revocation proceedings. Although the capias was in writing and directed law enforcement to arrest the Defendant, it failed to state "the substance of the complaint," as required by statute. It identified the case number and bore the notation "PV-00-000 PROBATION VIOLATION 4/3/2020," but it did not describe the nature of the alleged probation violations. Nor did it attach or incorporate by reference the prior violation warrants or the underlying probation violation report. *See* Tenn. Code Ann. § 40-6-201 (2018); *State v. Sharp*, No. E2017-00614-CCA-R3-CD, 2017 WL 6550622, at *5 (Tenn. Crim. App. Dec. 22, 2017) ("A revocation warrant is required to state the basis for which revocation is sought by identifying the alleged violation."), *perm. app. denied* (Tenn. Mar. 14, 2018).

More importantly, the circuit court clerk signed the capias, not a judge. The definition of a "warrant" and the plain language of the revocation statutes require the trial judge to sign the violation warrant. *See* Tenn. Code Ann. §§ 40-35-311 (requiring warrant

to be "issued under the trial judge's hand"); 40-6-201 (requiring warrant to be "signed by a magistrate," which, as defined by Tenn. Code Ann. § 40-1-106, includes judges, but not court clerks). Indeed, the Attorney General has likewise concluded that a probation violation warrant cannot be issued by a clerk but must instead be authorized by the trial judge. *See* Tenn. Op. Att'y Gen. No. 04-054 (Mar. 26, 2004) (interpreting section 40-35-311 to mean that a clerk or magistrate may not issue a probation violation warrant).

Because the alias capias lacked both judicial authorization and a statement of the alleged violations, it did not meet the statutory requirements for initiating a probation revocation proceeding. With the clerk's recall of the original violation warrants, the trial court lacked jurisdiction to adjudicate the alleged violations when the Defendant was arrested and brought before the court in 2024.

This conclusion aligns with the trial court's supplemental findings. A trial court may, in appropriate circumstances, retire a revocation proceeding from its active docket pending the defendant's recapture. *See State ex rel. Lewis v. State*, 447 S.W.2d 42, 43-44 (Tenn. Crim. App. 1969). As *Lewis* explains, retiring a case from the active docket does not dismiss the underlying criminal charges; rather, the indictment remains pending. The same principle applies in the probation context: a violation warrant should remain outstanding when revocation proceedings are temporarily retired.

Here, the circuit court clerk had several options available when the case was retired while the Defendant remained at large. It could have left the original and amended violation warrants in effect, thereby preserving the court's authority to act upon them if and when the Defendant was arrested. Alternatively, the clerk and the court could have reissued the violation warrants after the Defendant's arrest on the alias capias, assuming his sentences had not yet expired. Alternatively, the clerk and the court could have reissued the violation warrants after the Defendant's arrest. Indeed, in the supplemental hearing, the trial court noted both of these options as appropriate measures to preserve its jurisdiction.

However, after the court clerk recalled the violation warrants, they were never reissued, and their recall terminated the only valid process supporting the initiation of revocation proceedings. We, therefore, agree with the trial court's supplemental conclusion that, in the absence of any pending violation warrant or its lawful equivalent, it lacked the authority to hear and adjudicate the Defendant's probation violations.

## CONCLUSION

In summary, we hold that the trial court lacked subject matter jurisdiction to adjudicate the alleged probation violations.  The original and amended violation warrants were recalled before the Defendant's arrest, and they were never reissued or served.  Moreover, no other lawful process was filed to maintain or reinitiate the revocation proceedings.  Accordingly, we respectfully reverse the trial court's judgment and remand the case with instructions to dismiss the proceedings.

s/ *Tom Greenholtz*
TOM GREENHOLTZ, JUDGE